## DURKEE v. NATIONAL BANK OF FLORIDA.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1900.)

### No. 851.

**1. BANKS—DEPOSITS—RIGHT TO APPLY TO NOTE OF DEPOSITOR.**

The effect of a general deposit of money in a bank is to make the money the property of the bank, and the bank the debtor of the depositor. No trust exists in such cases. The bank does not hold the money as bailee, and it has the right to apply the deposit to the payment of matured notes of the depositor which it holds.

**2. ASSUMPSIT—PLEADING—DEFENSES.**

In an action against a bank to recover the amount of a general deposit the bank may show that it held notes of the depositor for an amount which equaled his deposit, and that the deposit had been applied to the payment of the notes under pleas to the effect that it was never indebted to the plaintiff as alleged, and that it did not have in its possession the sum sued for or any sum deposited with it by the depositor; and to make such defense it is not necessary for it to file a plea of set-off.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This action was brought by Joseph H. Durkee, as receiver of the Jacksonville, Tampa & Key West Railway, against the National Bank of the State of Florida, to recover $28,059.37. The declaration contained three counts. It was alleged in each count that Robert B. Cable had been first appointed receiver; that the order appointing him had been vacated, and Mason Young appointed; that Young, as such receiver, had deposited with the defendant bank the moneys sued for; that Young had been discharged as receiver, and ordered· to pay over all moneys held by him to his successor; and that the plaintiff was entitled to the money under this order. In .the first count it was alleged that on the 7th day of April, 1893, the defendant had in its possession $28,059.37 arising from the operation and earnings of the property, and deposited by Young as receiver, which sum Young, as receiver, directed the defendant to pay over to Cable as receiver, which the defendant refused to do. In the second count it was alleged that on the 8th day of April, 1893, the defendant had in its possession $28,059.37 arising from the operation and . earnings of the property, and deposited by Young as receiver; that on the same day Young made and delivered to Cable, as receiver, a certain check, draft, or order in writing, whereby he directed the defendant· to pay to the order of Cable, as receiver, the sum of $28,059.37, which check, draft, or order· Cable, as receiver, caused to be presented for payment, and the defendant refused to pay it. In the third count it was alleged that during such period of· Young's receivership he deposited, as receiver, funds and moneys arising from the operation and earnings of the property with the defendant, which funds were placed by the defendant to the credit of Young as receiver, and that when the receiver was discharged the defendant was indebted to the receiver in the sum of $28,059.37, which sum was due from the defendant to the receiver on account of the funds and moneys deposited by the receiver with the defendant, which sum of money, by reason of the aforesaid orders of the court, became due to Cable, and the plaintiff, having been appointed receiver of the property, became entitled to receive from the defendant the sum of $28,059.37.

The pleas on which the case was tried presented, among other defenses, the following: That the defendant was never indebted as alleged; that the defendant did not have in its possession on the 7th day of April, 1893, or at any subsequent day previous to the bringing of this suit, the sum of $28,059.37, or any sum, deposited with it by Mason Young as receiver; that each and every deposit of money set up in the plaintiff's declaration was made by Young in the usual course of business with the defendant, and made as a general deposit, and not as a special deposit, and that said general deposit had been drawn against and exhausted; that on April 8, 1893, the defendant had paid checks of Young to the amount of $73,816.81, and that sum was all the said Young had on that day on deposit with the defendant; and that Young since that day had deposited no money or fund with the defendant.

It was stipulated and agreed by the parties that a jury in the case be waived, and that the case be heard and determined upon ·all the facts by the court without a jury. The court (the Honorable James W. Locke presiding) made a special finding of the facts and the law as follows:

"This cause coming on to be heard by the court, a jury being waived by a stipulation of the parties in writing, and having been fully heard and considered, the court finds as matters of fact in this cause as follows: That the American Construction Company, a stockholder of the Jacksonville, Tampa & Key West Railway Company, filed its bill in this court on July 6, 1892, against the said railway company, praying discovery as to the financial affairs of the company, for an accounting, and for the appointment of a receiver. This bill alleged the execution and acceptance of first mortgages made by the railway company to the Mercantile Trust Company as trustee, amounting to $2,216,000, and the execution on May 5, 1890, of a second mortgage by said railway company to the Pennsylvania Company for Insurance of Lives & Granting Annuities, as trustees, for $4,000,000, known as the 'Consolidated Mortgage.' That the said railway company had issued another set of bonds, amounting to $3,592,000, known as the 'Consolidated Trust Bonds,' for the purchase of the stock and bonds of the Florida.·Southern Railway·Company and the St.· Johns & Eustis Railway Company, but which were not made a lien on the prop-· erty of the Jacksonville, Tampa & Key West Railway Company covered by

the above-mentioned mortgages, but were secured by a mortgage on the stock and bonds so purchased. The Mercantile Trust Company and the Pennsylvania Company, as trustees of the first and second mortgages covering the said railway property, were not made parties to said suit. That on July 23, 1892, the Pennsylvania Company, as trustee for the second mortgage, filed its bill in this court against the Jacksonville, Tampa & Key West Railway Company to foreclose its mortgage; alleging the execution of said mortgage, the issue of bonds thereunder, default therein, and conditions broken, and praying the appointment of a receiver, and the sequestration of the income and earnings of the mortgaged property,—the same being covered by said mortgage. That on said day Robert B. Cable was appointed said receiver of said railway property and its income and earnings. That on August 4, 1892, an order was made in this suit removing Cable as receiver, and the proceedings in said suit were stayed until further order of the court, and on the same day Mason Young was appointed receiver in the suit of the American Construction Company against said railway company. That on August 6, 1892, Mason Young, as receiver, filed his petition in the said suit of the American Construction Company, alleging that the Jacksonville, Tampa & Key West Railway Company had purchased the Florida Southern Railway Company and issued collateral trust bonds therefor, and that there was due thereon interest to the amount of $73,500; that certain other interest charges were due, and that certain notes of the said railway company, the amounts of which were unknown to said receiver, were due and outstanding, which said receiver might be able to renew. That said receiver did not have funds sufficient to meet said obligations, and asked permission to borrow different amounts, giving receiver's notes therefor, not to exceed $125,000. That the court made an order on the same day authorizing the receiver to pay such interest and obligations as might be due and payable by said railway company, to make renewals of said obligations, the same to be paid out of the incomes of the property or from any moneys in the hands of said receiver, and, if the same should not be sufficient, to issue receiver's notes in payment of said interest obligations, or, in the discretion of said receiver, to borrow money on receiver's notes to pay the same; the amount of said notes outstanding at any one time not to exceed $125,000. That notice of said application was served only upon H. Bisbee, solicitor of the American Construction Company, and T. M. Day, Jr., counsel for the Jacksonville, Tampa & Key West Railway Company. That on August 10, 1892, said receiver borrowed money from the defendant bank amounting to $38,000, giving therefor three (3) notes, for $12,666.67 each, in favor of D. G. Ambler, president of said bank, signed, 'Jacksonville, Tampa & Key West Railway Company. Mason Young, Receiver,' due three, four, and five months after date, which amount, less the discount thereon, was credited on the defendant's books to the account of Mason Young, receiver. That on the same day the defendant bank issued its New York draft, payable to the American Loan & Trust Company, for $36,000, and charged the same to the account of Mason Young, receiver, for which amount said receiver gave his check upon said bank, payable to T. P. Denham, defendant's cashier. That this $36,000 was used to pay interest due on the collateral trust bonds mentioned in the receiver's petition for authority to make notes. That the defendant bank did not know for what purpose this draft was to be used. That on or about September 27, 1892, Mason Young, as receiver, began depositing funds with the defendant bank, which deposits were credited on the bank books to the 'Jacksonville, Tampa and Key West Railway Company, Mason Young, Receiver,' and continued to make such deposits until the date of his discharge. That these moneys so deposited were from the proceeds of the notes hereinbefore stated, and from the current income and earnings of the Jacksonville, Tampa & Key West Railway Company, of which fact the defendant is presumed to have had knowledge. That Mason Young, as receiver, drew checks against this account, which were paid by the bank. That on August 23, 1892, said railway company appealed from the order made in the American Construction Company's case, appointing Mason Young receiver and authorizing him to borrow money and make receiver's notes therefor, and the Pennsylvania Company appealed from the order in its suit removing Robert B. Cable as receiver and staying proceedings in said suit. That said appeals were perfected, and

that all of said orders were reversed by the appellate court, and that on February 1, 1893, the mandates of the appellate court were filed in this court, reversing all the orders appealed from, including the order authorizing said receiver's notes and directing the receivership of Robert B. Cable to be restored. That on April 7, 1893, said mandates were announced, and in accordance therewith the order appointing Mason Young receiver in the case of the American Construction Company was vacated by this court, and said receiver required to restore all property of said railway company; and at the same time, by an order of this court, the receivership of Robert B. Cable was restored in the foreclosure suit brought by the Pennsylvania Company, and all the railway property, funds, earnings, and income were ordered restored to him as receiver. That Joseph H. Durkee, the plaintiff, was substituted in Cable's place as receiver in the foreclosure suit, and not in the stockholders' suit. That, when Mason Young was discharged as receiver, he had deposited in said defendant bank, which had been credited to said account of the 'Jacksonville, Tampa and Key West Railway, Mason Young, Receiver,' $28,059.37 in excess of the checks drawn by him as receiver, paid by said bank. That on April 7, 1893, Mason Young, as receiver, drew a check for this amount payable to R. B. Cable, receiver, which check was assigned to the plaintiff, and which the said bank refused to pay. That when the first note given by Mason Young as receiver, for $12,666.67, payable to D. G. Ambler, and indorsed by him to the bank, became due, it was paid by Mason Young, receiver, on November 11, 1892, partly by another note given to the defendant bank for $9,-000, signed, 'Mason Young, Receiver,' payable to the bank. That, by giving said note of $9,000 in part payment of the note then due, the amount of outstanding notes was not increased. That on November 11th, when this note was made, Mason Young, as receiver, had issued and had outstanding receiver's notes amounting to $153,333.34. That at no time from this date until his discharge did Mason Young have less than $150,000 in receiver's notes outstanding. That Mason Young made certain small payments on the other notes held by the bank, by checks which were drawn upon and charged to the account of the 'Jacksonville, Tampa and Key West Railway, Mason Young, Receiver.' That on April 6, 1893, the said notes, amounting to $28,059.37, being past due, were, without any specific direction of Mason Young, receiver, charged to said account of the 'Jacksonville, Tampa and Key West Railway, Mason Young, Receiver,' by the bank. That on June 28, 1893, upon the petition of Joseph H. Durkee, receiver, a rule was issued against the defendant bank, in the suit in which the said receiver was appointed, requiring the defendant bank to show cause why it should not pay over to said receiver the said sum of money. That defendant made return to said rule, contesting the jurisdiction of said court. That said rule was discharged on November 10, 1893, and on the same day an order was made authorizing the plaintiff to bring suit against the defendant for said amount, if in the judgment of said receiver such suit would result in benefit to the fund in his hands. That on April 8th the bank paid to the order of Mason Young, receiver, $73,816.81, which does not include the amount of $28,059.37, which had been charged off on account of overdue notes, as stated. And the court further finds, as conclusions of fact, that the amounts represented to be advanced by the defendant were advanced in good faith in accordance with the terms of the order of the court, which, at the time said advances were made, had not been appealed from.

"And the court finds, as matters of law, that the plaintiff was authorized to bring this suit; that the discharge of the rule is no bar to this suit; that, this being a suit against a bank for an amount claimed to be due at a certain date, the defense of [not] any amount due said bank at that time could be interposed under the general issue without a special plea of set-off; that the receiver's notes given for amounts borrowed from the bank under orders of the court were not receiver's certificates giving a lien upon the property of the railway company as security, but might be paid from earnings of the road whenever, in the discretion of the receiver, they could be; that said notes, having been discounted by defendant bank and placed to the credit of Mason Young as receiver of the Jacksonville, Tampa & Key West Railway Company, established a debit which the bank had a right to charge off against any deposits made by Mason Young in the same capacity; that the charging off of

said amount of $28,059.37 upon overdue receiver's notes was allowable; that there was not said amount of $28,059.37, or any other amount, due by said defendant to said plaintiff, as receiver, at the date of bringing the suit, and judgment should be entered for the defendant, and it is so ordered."

E. P. Axtell (J. C. Cooper, on the brief), for plaintiff in error.

W. H. Baker and H. B. Tompkins (A. W. Cockrell and Mr. Baker, on the briefs), for defendant in error.

Before McCORMICK and SHELBY, Circuit Judges, and PARLANGE, District Judge.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant bank held the three notes of Mason Young, receiver of the Jacksonville, Tampa & Key West Railway Company, for $12,666.67 each, dated August 10, 1892, and due, respectively, at three, four, and five months after date. These notes were given for money advanced by the bank. This money was placed with other money to Young's credit as receiver. When the notes became due the bank charged them to Young's account. In other words, it used the funds on deposit to pay these notes. It required all the funds that were to Young's credit to pay his notes. The controlling question in this case is, did the bank have the right to do this? If the bank had the right to apply these funds to the payment of these notes, then the plaintiff in error, as the successor of Young in the receivership, has no just claim against the bank. The money was in the bank as a general deposit. The effect of such deposit is to make the money the property of the bank, and the bank the debtor of the depositor. No trust exists in such cases. The bank does not hold the money as bailee. When, therefore, these notes fell due, the bank had the right to apply the deposits to their payment. Having done this, it was not indebted to Young or to his successor in the receivership. 2 Morse, Banks (3d Ed.) § 559; 1 Morse, Banks (3d Ed.) § 324; Bank v. Hughes, 17 Wend. 94; Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; Lehman v. Manufacturing Co., 64 Ala. 567, 595; Schuler v. Bank, 27 Fed. 424; 3 Am. & Eng. Enc. Law (2d Ed.) 835, and cases there cited.

It is not necessary to file a plea of set-off, to make this defense. The pleas filed were sufficient for that purpose. One of the pleas was to the effect that the defendant bank was never indebted to the plaintiff as alleged. Other pleas were to the effect that the defendant bank did not have in its possession the sum of $28,059.37, or any sum, deposited with it by Mason Young as receiver. These pleas were sustained by the findings of the court. When it was shown that the bank held Young's notes as receiver for an amount which equaled the deposits, and that the deposits had been applied to the payment of these notes, a good defense was proved under these pleas. The judgment of the circuit court is affirmed.