**In re COMPTON CORPORATION, Debtor.**

**EXXON CORPORATION, Plaintiff,**

**v.**

**COMPTON CORPORATION, Defendant.**

Bankruptcy No. 782–00055.
Adv. No. 782–0061.

United States Bankruptcy Court,
N. D. Texas,
Wichita Falls Division.

July 30, 1982.

Edward Lowenberg, Houston, Tex., for plaintiff.

Don Anderson, Abilene, Tex., for debtor.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

The case at bar presents the narrow question of whether the 90 day improvement of position test found in Code section 553(b), 11 U.S.C. § 553(b), applies to a post-petition setoff. The parties have submitted the case on agreed facts and only ask that a determination be made on the narrow issue of law. Based on an analysis of the stipulated facts, arguments of counsel, briefs submitted to the Court, pleadings on file, and the applicable law, the Court is of the opinion that § 553(b) does not apply to post-petition setoffs.

On May 7, 1982, an involuntary Chapter 7 bankruptcy petition was filed against the Gratex Corporation and the Compton Corporation. After a hearing held on May 20, 1982, the Court granted the Debtor's motion to consolidate and convert these proceedings to a voluntary Chapter 11 reorganization proceeding. By order of the Court, the date of filing the petition was then fixed as May 7, 1982.

On June 10, 1982, Exxon Corporation filed a Complaint for Relief from the Automatic Stay asserting a right to setoff mutual pre-petition debts with the Compton Corporation. In response to Exxon's complaint, Compton admits that Exxon has the right to setoff the mutual pre-petition debts and that it has no plan for adequate protection for Exxon's cash collateral. However, Compton argues that a setoff would improve Exxon's position during the 90 days preceding bankruptcy, and that Exxon's recovery should be limited by the amount of that improvement. Exxon contends that section 553(b) applies only to setoffs which occur prior to bankruptcy, and that the 90 day improvement of position test is inapplicable in this case.

The transactions giving rise to the mutual debts result from two contracts between Compton and Exxon. For several years, Exxon has sold crude oil to Compton from offshore leases in Aransas County, Texas pursuant to a Division Order. Compton has sold South Texas Mixed crude oil to Exxon at Pearsall Station, Texas pursuant to a separate contract. The crude oil deliveries under these contracts are made by way of a constant flow of oil which is calculated periodically and billed on a monthly basis. It is impossible to determine the precise flow of oil on any particular day, so the month-end balances are the most useful and feasible way to determine the relative obligations of the parties. These month-end balances are as follows:

| | Exxon Deliveries to Compton | Compton Deliveries to Exxon | Section 553(b)(2) Insufficiency |
|---|---|---|---|
| Feb. | $174,175.54 | $278,293.94 | None |
| Mar. | 263,281.92 | 172,019.96 | $91,261.96 |
| Apr. | 344,867.52 | 271,588.38 | – |
| May 7 | 378,695.68 | 288,787.71 | 89,907.97 |
| | | | $ 1,353.99 |

According to the month-end balances, the first date upon which there was an insufficiency was March 31, 1982. This figure is greater than the insufficiency on May 7 by $1,353.99. Therefore, if section 553(b) applies, Exxon's setoff right would be $288,787.71 minus $1,353.99, or $287,433.72. Otherwise, Exxon has the right to setoff $288,787.71.

Additionally, Defendant has paid Plaintiff for all crude oil delivered to Defendant since May 7, 1982. Plaintiff owes $96,255.52 for crude oil delivered by Defendant through the end of May, 1982, which is now due and payable.

## CONCLUSIONS OF LAW

In general, setoffs in bankruptcy are allowed to the extent that they are based upon mutual obligations existing between the debtor and a creditor. The rationale for permitting setoffs in bankruptcy is based on a concept of fairness. The creditor should not be forced to disgorge full payment on a debt owed to the debtor in bankruptcy, only to receive in return a minimal dividend on his claim owed to him by the debtor.

The Bankruptcy Reform Act carries into current practice the prevailing pre-Code concept of viewing a setoff claim as a form of security interest recognized under state law. This approach is adopted from commercial practice and is most understandable when analyzing the Code's treatment of setoff of bank deposits. Although retaining much of the pre-Code theory supporting the allowance of setoffs, the Code shifts the analysis of setoff rights from the field of preference law and places the controlling provisions in Bankruptcy Code section 553.

Two forms of direct limitation on setoffs are contained in § 553. In § 553(a), certain limitations regarding transfers of claims and the accrual of claims during the 90 days preceding filing of the petition are outlined. The second limitation is contained in § 553(b) and concerns only the creditor's right to implement the setoff during the 90 days prior to bankruptcy. It provides that pre-petition setoffs may be reduced and recovered by the trustee to the extent that the creditor's position is improved within the 90-day period.

The Bankruptcy Code substantially changed former bankruptcy law by allowing post-petition setoffs. The automatic stay provision contains a section enjoining the post-petition setoff of pre-petition claims except with the approval of the bankruptcy court. See 11 U.S.C.

§ 362(a)(7). By inference, a clear implication exists that a creditor can utilize his setoff remedy prior to bankruptcy without approval of a court. Although stayed by § 362(a)(7), a creditor who failed to setoff prior to the commencement of a case does not lose his right to a setoff. As applied to the case at bar, Exxon did not lose a right to setoff simply because it failed to setoff prior to the filing of the petition in the Compton case. Exxon's setoff right still exists, however, it must litigate and receive the opportunity to enforce that right by appearing before the bankruptcy court.

If Exxon had setoff its claim against Compton prior to filing the petition, it is very clear that Code § 553(b) would enable a trustee to utilize the improvement of position test to recover the amount by which the claim against the debtor exceeds the debt available for setoff assuming the insufficiency on the date of setoff is less than the insufficiency present on the later of 90 days before the date the petition was filed, or the date on which an insufficiency first arises. This improvement of position test is somewhat analogous to the improvement of position test found in preference law, except that the avoidance provisions of Code § 547(c)(5) permits avoidance of a security interest regardless of the creditor's pre-petition actions. Early drafts of the Bankruptcy Code provided that the improvement test be applied to bar setoffs to the extent that there was any improvement in position. A review of the legislative history reveals that the earlier drafts were replaced by a compromise amendment modifying section 553 "to clarify application of a two-point test with respect to setoffs." See 124 Cong.Rec. H11,098 (daily ed. Sept. 28, 1978); and S17,414 (daily ed. Oct. 6, 1978). As enacted, Code § 553(b) permits avoidance and recovery only if the setoff is exercised on or before the filing of the petition. See *2 Norton Bankr. L. & Prac.*, § 33.03, p. 7 (1981) for an excellent presentation of the legislative history and theory behind § 553(b).

The framers of the Bankruptcy Code sought to provide a structure to review a creditor's self-help right to exercise setoff prior to bankruptcy. In response to the perceived need, the provisions of Code § 553(b) were made available to permit the recovery of abusive setoffs which unduly improve the position of one creditor over that of another. In the case at bar, Exxon failed to exercise its right of setoff prior to the filing of the petition. Although not losing that right, Exxon must now proceed in the bankruptcy court by means of a complaint to lift the automatic stay so as to be allowed to exercise its already existing right to offset. By virtue of the availability of court review and the control now vested by the bankruptcy court over the exercise of Exxon's right to setoff, the need for a system of "checks and balances" like that found in § 553(b) is simply not present. Although this Court may decide to weigh the improvement of position test when framing the relief to be granted the Plaintiff, it would be sheer folly to fashion a decision allowing Exxon to setoff and then to mechanically require the disgorgement of a portion of that amount in satisfaction of the § 553(b) test. It is not necessary to mechanically apply the § 553(b) test, insofar as this Court is capable of taking the improvement factor into consideration when making a judgment as to the amount that Exxon may be allowed to setoff its claim. Consequently, in the case at bar, Exxon is to be allowed the right to setoff $288,787.71.